## ATLANTIC LLOYD'S INSURANCE COMPANY OF TEXAS, Appellant,

v.

## SUSMAN GODFREY, L.L.P., Jeffrey W. Chambers, and Thomas A. Adams, IV, Appellees.

No. 05–96–00981–CV.

Court of Appeals of Texas, Dallas.

Aug. 26, 1998.

Thomas B. Alleman, Winstead Sechrest & Minick PC, Dallas, for Appellant.

Barry C. Barnett, Susman Godfrey, L.L.P., Dallas, for Appellees.

Before OVARD, MALONEY and BRIDGES, JJ.

## OPINION

OVARD, Justice.

This is an appeal from a summary judgment in a declaratory action brought by an insurer, Atlantic Lloyd's Insurance Company of Texas (Atlantic), to determine coverage under a general liability insurance policy issued to the law firm of Susman Godfrey, L.L.P., including two of its attorneys, Jeffrey W. Chambers and Thomas A. Adams, IV (collectively "the Firm"). The pivotal issue is whether an attorney's solicitation letter sent to a prospective client provided a profession-

al service. We conclude it did not. For this and other reasons set out below, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

### A. THE LETTER

Several years ago, the Firm represented an injured woman in a medical negligence suit against Dr. Larry Likover. Likover and the woman settled the lawsuit, and the settlement agreement included a confidentiality clause. On January 21, 1994, Adams allegedly violated the confidentiality clause by sending a letter to a former patient of Likover informing the patient of the previous lawsuit filed against Likover. In the letter, Adams invited the former patient to contact the Firm to discuss the patient's particular circumstances and offered to answer any questions if the patient chose to file a lawsuit against Likover. Likover learned of this letter, which can best be characterized as a solicitation letter, and sued the Firm for defamation, among other claims.

### B. TENDERING LIKOVER'S LAWSUIT

The Firm maintained an insurance policy with Atlantic which imposed on Atlantic a duty to defend and indemnify the Firm for suits seeking damages for bodily injury, property damage, personal injury, and advertising injury. Pursuant to the insurance policy, the Firm tendered Likover's lawsuit to Atlantic. Atlantic filed a declaratory judgment action seeking a determination that it had no duty to defend and indemnify the Firm. Atlantic argued that the policy did not cover the underlying injury of the Likover suit, or alternatively, the policy contained a provision excluding coverage for incidents involving professional services. The Firm filed its own motion for summary judgment stating that Atlantic had a duty to defend or indemnify the Firm.

### C. SUMMARY JUDGMENT

The trial court's final judgment expressly granted the Firm's summary judgment motion while denying Atlantic's motion. The final judgment, however, also included the following language:

It is **ORDERED** that [Atlantic] has a duty to defend [the Firm] in the underlying lawsuit.

The final judgment fails to address Atlantic's duty to indemnify the Firm. The judgment concludes that "[a]ll other relief not expressly granted herein is denied."

In five points of error, Atlantic contends the trial court erred in rendering summary judgment for the Firm because (1) the Firm's policy does not provide coverage because the underlying injury is not an advertising injury, and (2) alternatively, if the underlying injury is an advertising injury, a "Designated Professional Services" exclusion precludes coverage. To the extent the trial court's final judgment does not provide Atlantic with a duty to indemnify, the Firm argues in a conditional cross-point the trial court erred in denying its motion for summary judgment for indemnity.

## STANDARD OF REVIEW

The standards for reviewing a summary judgment are well established: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law; (2) in deciding whether there is a disputed fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment must show that the plaintiff has no cause of action. A defendant may meet this burden by either (1) disproving at least one essential element of each theory of recovery, or (2) conclusively proving all elements of an affirmative defense. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993).

## DUTY TO DEFEND AND INDEMNIFY

An insurer's duty to defend and duty to indemnify are two distinct and separate duties. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997).

The duty to defend an insured is based upon the terms of the insurance contract. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines,* 939 S.W.2d 139, 141 (Tex.1997). A duty to defend arises if a plaintiff sues an insured, alleging facts that potentially support claims for which there are coverage. *Id.* The duty to defend is determined from the face of the pleading, without reference to the truth or falsity of the allegations. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1965). The insurer is to compare the four corners of the complaint with the four corners of the insurance policy to determine if the allegations potentially fall within the coverage of the policy. *Id.* at 23–25. The focus of the inquiry is the facts alleged; legal theories alleged are not determinative of the duty to defend. *See Maayeh v. Trinity Lloyds Ins. Co.,* 850 S.W.2d 193, 195 (Tex.App.—Dallas 1992, no writ).

## A. ADVERTISING INJURY

■ Before we address the central issue of whether an attorney's solicitation letter to a potential client provided a professional service, we must first address Atlantic's argument that the Firm's policy does not cover the underlying suit. Specifically, Atlantic argues that Likover's injury as a result of the January 21, 1994 letter written by Adams to Likover's former patient does not constitute an "advertising injury."

The Firm's insurance policy provides coverage for advertising injuries and provides the following definition of such an injury:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business;

    d. Infringement of copyright, title or slogan.

Contrary to the Firm's claims, Atlantic does not concede that the injury is an advertising injury.[1] Therefore, we must analyze the nature of the underlying claim to determine if the policy covers the incident.

It is well established that the construction of insurance policies is governed by ordinary contract principles. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). The construction of the insurance policy is a question of law for the court to determine. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex. 1983). If a term is susceptible to only one reasonable construction, it is the court's duty to give the word used its plain meaning. *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984).

The policy defines the term "advertising injury" as an injury arising from a written publication which slanders a person. Based on Adams's letter, Likover asserts a defamation cause of action. The crux of Likover's lawsuit is that Adams attempted to influence a former patient to sue Likover because of his allegedly deficient medical work. Adams's letter characterizes Likover's work as "sloppy, callous, unacceptable, impersonal, and indifferent," and states that his conduct was "so outrageous" that previous litigants obtained a multi-million dollar settlement. Clearly, the purpose of Adams's letter is to cast Likover in an unfavorable light to encourage a lawsuit against Likover. Adams then boasts about the Firm's previous success to gain the business of Likover's former patient.[2] Given the policy's plain meaning, it

---

1. In its brief, Atlantic essentially does concede that Likover's defamation falls within the coverage provision for advertising injury. Atlantic fails to argue that Likover's defamation claim is not an advertising injury. Instead, Atlantic relies solely on its argument that the professional services exclusion precludes coverage. Despite this line of argument in its brief, at oral argument Atlantic expressly denied it was conceding that

Likover's defamation claim falls squarely within the advertising injury provision in the insurance contract.

2. Specifically, the letter stated, "we obtained for the patient a multi-million dollar settlement from all responsible parties." This language was used despite the existence of a confidentiality agreement.

is clear that Likover's lawsuit falls within the term "advertising injury" provided by the policy.

## B. PROFESSIONAL SERVICES EXCLUSION

■ Having concluded that Likover alleges an advertising injury, we now address the pivotal issue: whether an attorney's solicitation letter sent to a prospective client provided a professional service. It is Atlantic's argument that the professional services exclusion clause precludes coverage for an attorney's solicitation letter. The professional services exclusion contained in the Firm's policy provides:

### EXCLUSION—DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of professional services:**
LEGAL SERVICES INCLUDED BUT NOT LIMITED TO COUNSELING, ADVICE, OR ANY OTHER SERVICES REGARDLESS OF WHERE, HOW AND BY WHOM PROVIDED WHICH MAY BE OR ARE PROVIDED OR RENDERED BY LAWYERS, PARALEGALS AND OTHERS WORKING IN A LAW OFFICE AND/OR ADMINISTRATION, MANAGEMENT OR OTHER SERVICES ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE LEGAL SERVICES DESCRIBED HEREIN.

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

Atlantic claims that the phrase "professional services" includes acts that are an integral aspect of the practice of law, and the solicitation of clients is an integral aspect. The Firm contends Adams's letter, however, merely creates the opportunity to provide professional services for others. The letter does not render legal services and does not constitute the practice of law. The letter, thus, is incidental to the practice of law, and coverage is not precluded by the professional services exclusion.

In determining the applicability of the professional services exclusion to Atlantic's duty to defend and indemnify the Firm, we must ascertain whether the solicitation of business constitutes the rendering of professional services. We are unable to locate, and neither party brings to our attention, any Texas cases which construe the phrase "professional services" in the factual context presented here.[3] The definition of "professional services" most often used was discussed initially in *Maryland Casualty Co. v. Crazy Water Co.*, 160 S.W.2d 102, 104 (Tex.Civ.App.—Eastland 1942, no writ). In *Maryland Casualty Co.*, the court stated that the term "profession" is best understood by mention of prominent elements and characterized by how others use its distinguishing education or special knowledge. *Id.; see also Direlco, Inc. v. Bullock,* 711 S.W.2d 360, 362 (Tex. App.—Austin 1986, writ ref'd n.r.e.). This definition is supported by *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 157 N.W.2d 870, 871–72 (1968). The Nebraska Supreme Court defined the term "professional services" as something more than an act flowing from mere employment. *Id.* To determine whether a particular act is considered a professional service, that court concluded the focus is on the act itself and not the title or character of the party performing the act. *Id.*

■ According to these definitions, it is clear that a professional must perform more than an ordinary task to perform a professional service. To qualify as a professional service, the task must arise out of acts par-

---

**3.** Previous cases discussing the term "professional services" most frequently involve medical negligence claims.

ticular to the individual's specialized vocation. We do not deem an act a professional service merely because it is performed by a professional. Rather, it must be necessary for the professional to use his specialized knowledge or training. *See Bank of Cal., N.A. v. Opie*, 663 F.2d 977, 981 (9th Cir.1981); *Shelton v. American Ins. Co.*, 507 So.2d 894, 896 (Miss. 1987); *Danks v. Maher*, 177 So.2d 412, 417–18 (La.Ct.App.1965).

Atlantic offers two reasons why it has no duty to defend and indemnify the Firm. First, Atlantic contends the regulated nature of client solicitation subjects the letter to the professional services exclusion. Next, Atlantic argues Adams's letter reflects the exercise of trained judgment and specialized knowledge which are indicia of a professional. We will address both arguments in turn.

Atlantic argues the strict regulation of client solicitation supports its position that client solicitation is an integral aspect of the practice of law and thus coverage is excluded by the professional services exclusion. Atlantic directs this Court to the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1998) (TEX. STATE BAR R. art. X, § 9). The Disciplinary Rules of Professional Conduct contain very stringent guidelines pertaining to written solicitations of clients. TEX. DISCIPLINARY R. PROF'L CONDUCT 7.02, 7.05. Atlantic argues that because the written solicitation of clients is heavily regulated by the profession of law itself, written solicitations thus fall within the exclusion for professional services. We disagree with this argument.

■ Atlantic would have this Court believe that the mere presence of outside professional regulation of a subject area transforms that subject area into a matter inherent to that profession. Applying this logic, almost any matter regulated would be subsumed into a matter inherent to that profession. Not all acts performed by a professional are professional services. *See Bank of Cal., N.A.*, 663 F.2d at 981; *see also Cohen v. Empire Cas. Co.*, 771 P.2d 29, 31 (Colo.Ct. App.1989) (office expenses are incidental to a lawyer's business and cannot be considered

part of his activities inherent to the legal profession). Rather, these regulations are used to guide the profession to ensure the effective administration of the profession as a whole. Professional services are considered those acts which use the inherent skills *typified* by that profession, not *all* acts associated with the profession. *See Bank of Cal., N.A.*, 663 F.2d at 981.

Atlantic next argues the professional services exclusion precludes coverage because Adams's letter contains statements that reflect the specialized knowledge inherent to the legal profession. Atlantic argues that Adams evaluated the situation, concluded that medical negligence had caused an injury, discussed the existence of a prior settlement, and expressed his interest in pursuing a cause of action on the patient's behalf. According to Atlantic, these actions constitute professional services inherent to the profession. We do not agree.

We look to the letter itself to determine if the Firm provided professional services. *See Marx*, 157 N.W.2d at 871–72. The Firm did not render professional services in the letter. None of the opinions or language in the letter provided legal services. The Firm did not advise Likover's former patient, but rather invited him to contact the Firm. The letter offered no legal opinion with respect to the patient's particular case. The letter simply acknowledged that he was a former patient of Likover and that Likover previously had been the subject of litigation. The letter then concluded by offering the possibility of representation. The Firm merely engaged in a practice designed to acquire new business.

The Firm outlined the possibility for representation. If the recipient of the solicitation letter chose to pursue representation, then the Firm would have the opportunity to offer professional services. The letter itself does not provide any professional services. It is merely a medium for attracting new clients, and thus is incidental to the profession. The decision to send a solicitation letter to Likover's former patient allegedly in violation of the confidentiality clause was not the rendering of professional services. The solicitation letter was rather an invitation to

pursue the opportunity to render professional services. The Firm's potential liability did not arise from acts in rendering professional services. Instead, the Firm's potential liability arose from allegedly defamatory statements contained in the solicitation letter, the sending of which was incidental to professional services.

Furthermore, the solicitation of clients does not require the specialized skills particular to the legal profession. Soliciting clients does not require a lawyer to use the specialized education and knowledge inherent to lawyers. A lawyer's day-to-day functions include advising clients, drafting pleadings, analyzing caselaw, and conducting trial strategy sessions, among other activities. These functions each require skills solely belonging to the legal profession. If the Firm did breach a duty not to defame, it breached the general duty not to defame, owed by all, which does not arise strictly out of the legal profession. *See Treadway v. Vaughn*, 633 So.2d 626, 629 (La.Ct.App.1994).

We hold that this solicitation letter, which we have determined does not include any legal advice, does not fall within the exclusion for "Designated Professional Services" in the Firm's policy. We overrule Atlantic's points of error. We next address the Firm's conditional cross-point.

### THE FIRM'S CROSS–POINT

■ In its conditional cross-point, the Firm argues the trial court erred to the extent the final judgment does not provide Atlantic with a duty to indemnify. We disagree.

In its petition, the Firm alleged that Atlantic had a duty to defend *or* a duty to indemnify the Firm. The Firm then filed a motion for summary judgment contending that Atlantic had a duty to defend *or* indemnify the Firm, the same relief it requested in the petition. The trial court granted the Firm's motion and *expressly* stated that Atlantic had a duty to defend.

Neither the Firm's petition nor its motion for summary judgment asked for a declaration that Atlantic had a duty to defend *and* a duty to indemnify. Rather, the petition and the motion for summary judgment sought relief in the disjunctive. The trial court could only grant summary judgment on a duty to defend *or* a duty to indemnify. Because the relief sought was requested in the disjunctive, the trial court's only available option was to select either the duty to defend or the duty to indemnify. The trial court correctly ordered Atlantic to defend the Firm. In essence, the Firm received the relief it requested from the trial court. The Firm is now unable to seek additional relief from this Court on appeal. *See Page v. Geller*, 941 S.W.2d 101, 102 (Tex.1997) (holding it is error for a trial court to grant more relief than requested). We overrule the Firm's conditional cross-point and affirm the trial court's judgment.