Reversed and Remanded and Opinion filed June 13, 2002














Reversed and
Remanded and Opinion filed June 13, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-00-01081-CV

_______________

 

OMNI METALS,
INC., Appellant

 

V.

 

POE & BROWN OF TEXAS, INC. AND

TRANSCONTINENTAL
INSURANCE CO., Appellees

_____________________________________________________________

 

On Appeal from
the 61st District Court

Harris County, Texas

Trial Court
Cause No.  96-36058-A

_____________________________________________________________

 

O P I N I O N

            In this appeal, we address whether
an insurer and insurance agent misrepresented coverage under a bailee’s policy, or had a duty to disclose policy
exclusions, in responding to an inquiry by their insured’s bailor.  The trial court granted summary judgment in
favor of the insurer and insurance agency, appellees
Transcontinental Insurance Company and Poe & Brown of Texas, Inc.  The bailor,
appellant Omni Metals, Inc., appeals raising seven issues: (1) appellees had the duty to disclose an exclusion of
coverage; (2) fact issues exist about misrepresentation of coverage; (3) fact
issues exist about misrepresentations made to the bailee,
upon which Omni relied; (4) Omni did not have notice of the policy and had no
duty to read it; (5) Poe & Brown was not rendering a professional service
that exempts it from the DTPA; (6) lack of privity
does not disqualify Omni as a consumer under the DTPA; and (7) Omni has a cause
of action for attorneys’ fees.  We
reverse and remand. 

                                                            I. 
BACKGROUND[1]

            Omni is a customer of Port Metal, a
steel processing company.  Port Metal’s
business entails keeping large coils of steel for its customers and cutting and
processing steel pursuant to customer specifications.  Port Metal keeps the steel coils at no cost
for sixty days but charges a storage fee based on tonnage if they remain
longer.  

            Concerned about insurance for its
customers’ property while located at its premises, Port Metal sought the advice
of an insurance agent.  The agent, Danny
Sparks, who worked for Poe & Brown at the time of the loss, advised that
Port Metal needed a bailee’s liability policy.  The agent thus procured a $3,000,000 “all
risk,” bailee liability policy from
Transcontinental.  The policy was renewed
each year.

            In 1992, when Port Metal’s president
read the policy, he noticed that it excluded coverage for property stored for a
fee.  He told the insurance agent that he
charged his customers a storage fee. 
However, the insurance agent told him that the exclusion “prohibited
[Port Metal] from storing things other than coils or Port Metal Processing’s
business and [Port Metal] couldn’t go out and store washing machines or
something without obtaining additional coverage.”  Poe & Brown’s agent also advised at least
one of Port Metal’s customers that it did not need to buy additional insurance
because its steel was covered under the bailee
liability policy while at Port Metal.

            During this time, Poe & Brown
also provided certificates of insurance to Omni.  On the certificate for the 1992-93 policy,
Poe & Brown noted the $3,000,000 bailee liability
policy issued by Transcontinental.  It
also noted on the certificate, “coverage includes property of others in custody
of insured.”[2]  In subsequent years, this notation was
dropped, and the designation “all risk” appeared.[3]  Finally, in 1995, two months before a fire
damaged Omni’s steel, Poe & Brown sent another certificate to Omni in
response to an inquiry from Omni to Port Metal. 
In sending the certificate to Omni, Poe & Brown understood that Omni
wanted to make sure its property at Port Metal was insured.

            In December 1995, a fire started at
a property adjacent to Port Metal and spread. 
Omni sustained over $1,000,000 in damages to its steel.  When Omni submitted its claim under Port
Metal’s bailee liability policy, the insurer,
Transcontinental, denied coverage because the policy did not cover property stored
for a fee.  

            Omni then brought suit against
Transcontinental and Poe & Brown for misrepresentation, failure to
disclose, and violations of the DTPA and Insurance Code.  Poe & Brown and Transcontinental filed
motions for summary judgment, claiming that there was no misrepresentation or
false and misleading act.  Additionally,
Poe & Brown’s motion contained the following grounds: (1) it provided Omni
a professional service exempt from the DTPA; (2) Omni had a duty to read the
policy; (3) Omni did not qualify as a consumer because it did not directly
purchase or lease goods or services from Poe & Brown; and (4) Omni could
not recover attorney’s fees as damages because Poe & Brown committed no
wrongful acts.  Lastly, Transcontinental
raises for the first time on appeal the ground that it has no agency liability
for Poe & Brown’s actions.

            We reverse and remand because: (1)
under the circumstances presented in this case, appellees
had a duty to disclose additional coverage information to Omni; (2) fact issues
exist about misrepresentations made to Omni; (3) fact issues exist about
misrepresentations made to Port Metal, upon which Omni relied; (4) the
professional services exemption does not apply to cases filed before September
1, 1996; (5) even if applicable, Poe & Brown did not meet its summary
judgment burden regarding the professional services exemption; (6) one of
Omni’s DTPA claims (brought via the Insurance Code) does not require consumer
status; (7) Omni is not barred from its other DTPA claims because privity is not required for consumer status; (8) on the
grounds presented regarding attorney’s fees as damages, Poe & Brown is not
entitled to summary judgment; and (9) Transcontinental is not entitled to
summary judgment on a ground first raised on appeal.

                                                    II. 
STANDARD OF REVIEW

            To prevail on a motion for summary
judgment, a defendant must establish that no material fact issue exists and
that it is entitled to judgment as a matter of law.  Rhone-Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 222 (Tex. 1999).  If the defendant meets this burden, plaintiff
must raise a genuine issue of material fact on the targeted element or elements
of the cause of action.  Gonzalez v. City of Harlingen, 814
S.W.2d 109, 112 (Tex. App.—Corpus Christi 1991, writ denied).  In reviewing a summary judgment, an appellate
court accepts as true all evidence supporting the non-movant.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 549 (Tex.
1985).  All inferences are indulged in
favor of the non-movant, and all doubts are resolved
in its favor.  Id.  When the trial court does not state the
grounds for granting the motion, and several grounds are provided, the
reviewing court must determine if any of the grounds would support the
judgment.  Rogers v. Ricane Enter., Inc., 772
S.W.2d 76, 79 (Tex.
1989).  Finally, because the propriety of
summary judgment is a question of law, we review the trial court’s decision de
novo.  Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994).

                             III. 
MISREPRESENTATION & DUTY TO DISCLOSE

            In its first and second issues, Omni
contends that appellees misrepresented coverage and
violated the duty to disclose the storage exclusion.  




 








                                                            A. 
Duty to Disclose

            We first address the duty to
disclose the storage exclusion.  “Where
there is a duty to speak, silence may be as misleading as a positive
misrepresentation of existing facts.” Smith
v. Nat’l Resort Cmty., Inc., 585 S.W.2d 655, 658
(Tex.
1979).  Whether a duty to disclose exists
is a question of law.  Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001); Ralston Purina Co. v. McKendrick,
850 S.W.2d 629, 633 (Tex. App.—San Antonio 1993, writ denied).  In support of its argument, Omni cites
section 551 of the Restatement of Torts and Hoggett v. Brown, 971 S.W.2d 472 (Tex. App.—Houston [14th Dist.] 1997,
pet. denied). 

                                                                 1. 
Section 551

Section
551, entitled Liability for Nondisclosure, states as follows:

 

 class=Section3>

(1) One who fails to
disclose to another a fact that he knows may justifiably induce the other to
act or refrain from acting in a business transaction is subject to the same
liability to the other as though he had represented the nonexistence of the
matter that he has failed to disclose if, but only if, he is under a duty to
the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business
transaction is under a duty to exercise reasonable care to disclose to the
other before the transaction is consummated

    . . . .

(b) matters known to him
that he knows to be necessary to prevent his partial or ambiguous statement of
the facts from being misleading; and

(c) subsequently acquired
information that he knows will make untrue or misleading a previous
representation that when made was true or believed to be so; and

(d) the falsity of a
representation not made with the expectation that it would be acted upon, if he
subsequently learns that the other is about to act in reliance upon it in a
transaction with him; and

(e) facts basic to the
transaction, if he knows the other is about to enter into it under a mistake as
to them, and that the other, because of the relationship between them, the
customs of the trade or objective circumstances, would reasonably expect a
disclosure of those facts.

 

 

 class=Section4>

Restatement (Second) of Torts § 551 (1977).  The Texas Supreme Court has never adopted
this section.  Bradford, 48 S.W.3d
at 755.  Therefore, we overrule Omni’s
issue as to section 551.  See Engstrom v.
First Nat’l Bank, 936 S.W.2d 438, 444–45 (Tex. App.—Houston [14th Dist.]
1996, writ denied) (declining to adopt section 551).

                                                     2.  Hoggett Duty to
Disclose

    In Hoggett, this court recognized that a duty to disclose may
arise in a commercial context.  “A duty
to disclose may arise in four situations: (1) when there is a fiduciary
relationship; (2) when one voluntarily discloses information, the whole truth
must be disclosed; (3) when one makes a representation, new information must be
disclosed when that new information makes the earlier representation misleading
or untrue; and (4) when one makes a partial disclosure and conveys a false
impression.”  Hoggett, 971 S.W.2d at 487.  

    Omni contends that a duty to disclose arose
under Hoggett
scenarios three and four.  Considering
the appellate record, we agree. 

    Under Hoggett scenario three—a duty to
disclose new information that makes an earlier representation misleading or
untrue—Omni argues that Poe & Brown should have revealed the storage fee
exclusion to correct impressions made from earlier certificates of
insurance.  The earliest certificate of
insurance, for the 1992-93 bailee policy, contains
the following language: “coverage includes property of others in custody of
insured.”[4]  Danny Sparks, the insurance agent employed by
Poe & Brown at the time of the fire loss, sent this certificate to
Omni.  The summary judgment evidence also
shows that Sparks was aware
of the storage fee exclusion by May 1995. 
Further, he had been questioned about the storage fee exclusion by Port
Metal’s president, who revealed that Port Metal charged its customers a storage
fee.  Despite this development, Sparks did not
disclose or provide additional information about the storage exclusion to Omni,
even when he knew that Omni wanted to make sure that its property was covered
by insurance purchased by Port Metal. 
Thus, Sparks never
corrected the impression conveyed by the 1992-93 policy, which was misleading
given facts Sparks later
learned.  Accordingly, we hold that these
circumstances create a fact issue on whether appellees
breached the duty prescribed under Hoggett’s scenario three. 

    Relying on Hoggett scenario four, Omni contends
that, under the circumstances, the “all risk” certificate of insurance[5] was
a partial disclosure that conveyed a false impression.  We agree. 
We conclude that the evidence shows Poe & Brown understood it was
answering Omni’s question, “Is my property at Port Metal’s facility
covered?”  At that time, Poe & Brown
knew that Port Metal wanted to cover all property of its customers, was aware
of the storage exclusion in the policy, and knew that Port Metal was charging
its customers a storage fee.  Despite
this knowledge, the certificate of insurance was its only answer, a partial
answer, to Omni’s question.  The
certificate verified “all risk” bailee liability
coverage with a $3,000,000 limit.  In
deposition, Poe & Brown’s corporate representative admitted that the term
“all risk” did not really cover all possible risks and was possibly
confusing.  Thus, taken in the light most
favorable to Omni, the all risk designation left a false impression under the
circumstances.  Accordingly, there is a
fact issue whether appellees met their duty under Hoggett scenario
four.

    Having found fact issues remain about appellees’ duty to disclose additional information under Hoggett scenarios
three and four, we sustain issue one.

                                                          B. 
Misrepresentation

    In its second issue, Omni contends that a
fact issue exists on whether appellees misrepresented
coverage because, under the circumstances, the “all risk” certificate of
insurance was false and misleading.  The
elements of misrepresentation are (1) a 
representation made by a defendant in the course of business; (2) the
defendant supplied false information for the guidance of others in their
business; (3) the defendant failed to exercise reasonable care or competence in
obtaining or communicating the information; and (4) the plaintiff suffers
pecuniary loss by justifiably relying on the representation.  Fed.
Land Bank Ass’n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex.
1991).  

    In their motions for summary judgment, appellees argued that the “all risk” representation in the
certificate cannot be considered a misrepresentation as a matter of law, citing
N. Am. Shipbuilding, Inc. v. S. Marine
& Aviation Underwriting, Inc., 930 S.W.2d 829, 835-36 (Tex.
App.—Houston [1st Dist.] 1996, no writ). 
While it is true that “all risk” is an accepted term of art in the
insurance industry,  Muniz v. State Farm Lloyds, 974 S.W.2d 229, 234 (Tex. App.—San
Antonio 1998, no writ), we do not agree that a false impression can never be
conveyed by use of the term.  For
instance, in Lexington Ins. Co. v.
Buckingham Gate, Ltd., 993 S.W.2d 185, 195 (Tex. App.—Corpus Christi 1999,
pet. denied), the use of the term “all risk” was part of the evidence that an
insurance broker misrepresented the scope of insurance it obtained on a
property. 

    Further, N.
Am. Shipbuilding is distinguishable for several reasons.  First, the “all risks” representation in that
case was found in the insurance policy,
not just in two words on a certificate: “[this policy] insures against all
risks of physical loss or damage to the Vessel . . . except as herein
provided.”  930 S.W.2d at 831.  Second, an exclusion for faulty workmanship
was also fully delineated in the same document. 
In comparison, the certificate sent to Omni did not set forth the
storage exclusion.  Third, the defendants
in N. Am. Shipbuilding did not
communicate the “all risk” policy clause in response to a specific
inquiry.  In contrast, Poe & Brown
provided the “all risk” certificate in response to Omni’s inquiry for
confirmation that its steel was covered while at Port Metal.  Fourth, in N. Am. Shipbuilding, the insured failed to provide summary judgment
proof that the insurer misrepresented the coverage to include faulty
workmanship.  The summary judgment proof
here reveals that appellees told Port Metal that the
storage exclusion did not apply.

    We find the case of Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20 (Tex. 1990),
more analogous to the present case.  In Black, an employer purchased an
automobile liability policy for a truck leased to it and used by an
employee.  The policy excluded coverage
for accidents arising from personal use of the truck.  The employee who used the truck did not
receive a copy of the policy.  Instead,
he only received a card, which stated, “This policy complies with the compulsory
auto laws of the State of Texas.”  Id. at
24.  Further, the employee averred in an
affidavit that through his payment of premiums, conversations with his
employer, and the insurance card, he understood the insurance to cover personal
use of the truck.  Additionally, Victoria
Lloyds had misrepresented that “complete liability insurance” had been
provided.  Id. at
25.  Based on the card and the employee’s
affidavit, the Texas Supreme Court found that a fact issue existed “concerning
misrepresentation of the liability insurance coverage for personal use.”  Id.  Here, we have not only the certificate of
insurance but also evidence indicating that appellees
misrepresented the scope of the bailee policy to Port
Metal.  Moreover, appellees
sent the certificate in answer to Omni’s inquiry to verify coverage, and their
representative admitted that the “all risk” term was confusing.  Considering all of the circumstances under
which the certificate was published and delivered, we hold that a fact issue
exists as to whether appellees misrepresented the
coverage afforded by the policy. 
Accordingly, we sustain issue two.

                                                         C. 
Counter-Arguments 

    In considering issues one and two, we will
address appellees’ three counter-arguments, urged
generally in reply to issues one and two. 
Appellees argue (1) as a matter of law,
issuance of an insurance certificate does not create a duty to the certificate
holder; (2) as a matter of law, disclaimers in the certificate prevent creation
of a false impression; and (3) an insurer should have no duty to explain policy
exclusions to a certificate holder because it has no duty to explain them to
the insured.  We acknowledge insurance
industry custom and applicable legal doctrines, but find that all these
arguments are distinguishable from the facts before us.

    Appellees first
argue that, as a matter of law, issuance of a certificate of insurance to a
non-customer does not create a duty to the certificate holder, citing Lu-An-Do, Inc. v. Kloots,
721 N.E.2d 507, 510 (Ohio Ct. App. 1999). 
In Lu-An-Do, a mortgagee of
real property received a certificate of insurance that evidenced insurance on
the building.  The insurer did not know
that the mortgagee also held an interest in the contents of the building.  When a fire damaged the building and its
contents, the mortgagee sued the insurance company for negligent
misrepresentation because the policy did not cover the contents.  The court held that (1) issuance of a
certificate to a non-customer does not create a duty to the certificate holder;
and (2) though the mortgagee might be a third party to whom the insurer must
not make misrepresentations, the extent of the mortgagee’s reliance on the
certificate in this instance was unforeseeable. 


    We distinguish Lu-An-Do for several reasons. 
First, the court did not address a failure to disclose claim.  Second, foreseeability
of Omni’s reliance on the certificate was not raised in this case.  Third, our holding that a duty to disclose
arose and a fact issue exists on misrepresentation does not stand for the
proposition that mere issuance of a certificate of insurance creates a duty to
the certificate holder.  Finally, Ohio case law
is merely persuasive authority, not precedent. 
Appellees have not cited any Texas authority
that directly addresses and supports their “no duty” argument. 

    Next, appellees
contend that disclaimers in the certificate[6] prevent
creation of a false impression, citing Frith v. Guardian Life
Ins. Co. of Am., 9 F. Supp.2d 744 (S.D. Tex. 1998).  Frith is an insurance premium case in which the defendants
moved for dismissal for failure to plead the allegations with sufficient
particularity.  See id. at 744 (Federal Rule of Procedure 9(b) requires averments
of fraud or mistake to be stated with particularity).  The opinion only minimally reveals the facts
of the case.[7]  Apparently, the plaintiffs tried to bring a
misrepresentation claim based on cost illustrations provided by the
insurer.  Id. at
744–45.  Without identifying which aspect
of the cost illustration the plaintiffs alleged was false, the court noted
disclaimers were present and alluded to a previous ruling that “nothing in the
illustrations . . . stated that Plaintiffs would no longer have to make premium
payments . . . or that the premium payments would vanish.”  Id. at
745.  Additionally, the plaintiffs
claimed breach of a duty to disclose. 
While the court recognized that “a person who makes a partial disclosure
has a duty to tell the whole truth,” the factual allegations in plaintiff’s
pleadings were insufficient to support such a contention.  Id.  

    Consequently, we do not read Frith to contain
the bright-line rule advanced by appellees that
disclaimers preclude creation of a false impression as a matter of law.  In this case, the insurance certificate
contains both the pre-printed disclaimers and the “all risk” designation, which
the summary judgment proof shows could be confusing.  Thus, the disclaimers in the certificate
present a conflicting fact that we must disregard in applying the summary
judgment standard of review.  See Harwell v. State Farm Mut. Auto Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995) (all
conflicts in the evidence will be disregarded).

    Lastly, appellees
contend they have no duty to disclose to a noncustomer
because they have no duty to explain policy exclusions to an insured, citing Nwaigwe v. Prudential Prop. & Cas. Ins. Co., 27 S.W.3d 558 (Tex. App.—San Antonio
2000, pet. denied) (fire policy excluded coverage if dwelling was vacant 60
consecutive days).  Again, we do not find
such a bright-line rule iterated in Nwaigwe.  Further, we
are not establishing a general duty to explain policy exclusions to insureds or certificate holders.  Instead, the Hoggett duty to disclose arose in
this case only because, under the circumstances, the appellees
made a partial disclosure and failed to prevent their partial or ambiguous
statement from being misleading. 
Finally, although the insured in Nwaigwe was not told about the vacancy exclusion, the
insured told the insurer that his dwelling would not remain vacant for more
than 30 days.  Because of this, the court
found no duty to disclose the exclusion. 
In contrast, the summary judgment evidence here reveals that appellees provided the certificate as an answer to Omni’s
inquiry about whether its steel was covered at Port Metal.  Appellees knew
about the storage exclusion, knew that Port Metal was charging its customers a
storage fee, knew that Port Metal intended to cover all property of its
customers, and professed to Port Metal to have provided such coverage.  Appellees chose to
answer Omni’s question without providing information about the exclusion. 

    In summary, our narrow holding is that
issuance of a certificate of insurance (Exhibit 1) without disclosure of
additional information about the storage fee exclusion and issuance of another
certificate (Exhibit 3), coupled with the circumstances under which it was sent
to Omni and the assurances of coverage to Port Metal, give rise to causes of
action for misrepresentation.  We reject appellees’ arguments that, as a matter of law, issuance of
an insurance certificate does not create a duty; presence of disclaimers
precludes the creation of a false impression; no duty to disclose arises
because there is no duty to explain policy exclusions to an insured; and the
use of “all risk” cannot convey a false impression.  We have sustained Omni’s issues one and two.

                                 IV. 
MISREPRESENTATIONS TO PORT METAL

    In issue three, Omni contends that fact
issues exist about whether appellees made
misrepresentations to Port Metal, upon which Omni relied.  We agree. 
Certain persons, other than the direct recipient of a misrepresentation,
can sue for negligent misrepresentation. 
See Restatement (Second) of Torts § 552(2) (1977).[8]  Texas courts
have adopted section 552.  McCamish, Martin, Brown & Loeffler
v. F.E. Appling Interests, 991 S.W.2d 787, 791 (Tex. 1999); Fed. Land Bank Ass’n
of Tyler, 825
S.W.2d at 442. 

    Appellees did not
argue in their motions for summary judgment that Omni was precluded from the
class of persons who could sue for appellees’
misrepresentations to Port Metal. 
Further, the summary judgment evidence shows that appellee
Poe & Brown erroneously informed Port Metal’s president that the storage
exclusion prohibited him “from storing things other than coils or Port Metal
Processing’s business and [he] couldn’t go out and store washing machines or
something without additional coverage.” 
Poe & Brown’s employee also told Port Metal’s president that the
policy would cover “[p]roduct owned by my customers
for processing in—located in my facility.” 
This evidence raises a fact issue about whether appellees
misrepresented coverage to Port Metal. 
Accordingly, we sustain issue three.

                                                V. 
FAILURE TO READ POLICY

    In its fourth issue, Omni contends that the
trial court erred in granting summary judgment on the ground that Omni failed
to read the policy.  Poe & Brown, the
only appellee to advance this ground, offered no
authority in its motion for summary judgment that Omni had a duty to read the
policy.  It also failed to provide any
authority that such a duty would preclude misrepresentation and DTPA
claims.  In its appellate briefing, Poe
& Brown concedes that “it may be true that Omni had no ‘duty’ to read the
policy.”  Further, in two cases upon
which Omni relies, the failure to read the policy was no apparent bar to a
claim for misrepresentation.  Black, 797 S.W.2d at 21–25; Lexington, 993
S.W.2d at 194, 196.  Given the dearth of
authority in support of appellees’ position, Omni’s
failure to read the policy does not support the granting of summary
judgment.  Issue four is sustained.

                              VI. 
DTPA PROFESSIONAL SERVICE EXEMPTION

    In its fifth issue, Omni contends that the
trial court erred in granting summary judgment on its DTPA claims based on the
professional service exemption.  See Tex.
Bus. & Com. Code Ann. § 17.49(c) (Vernon Supp. 2002) (subchapter
does not apply to a claim based on the rendering of a professional service, the
essence of which is provision of advice, judgment, opinion, or similar
professional skill).  First, this exemption
was not effective for cases filed before September 1, 1996. 
See Stafford v. Lunsford, 53
S.W.3d 906, 910 (Tex. App.—Houston [1st
Dist.] 2001, n.p.h.). 
Omni apparently filed its original petition in July 1996.[9]

    Second, there is very little case law interpreting
the professional services exemption. 
Omni contends that the provision is meant “to remove the DTPA as a
vehicle for professional malpractice claims.” 
Teel Bivins et al., The 1995 Revisions to the DTPA: Altering the Landscape, 27 Tex. Tech L. Rev. 1411, 1451
(1996).  This intent was certainly
followed  in Stafford, in which
a legal malpractice claim was barred by the exemption.  53 S.W.3d at 910.  However, the plain language of section
17.49(c) is not limited to malpractice claims.

    Texas courts
have addressed the definition of “professional services” in circumstances other
than the DTPA.  See, e.g., Atlantic Lloyd’s Ins. Co. of Tex. v. Susman
Godfrey, L.L.P., 982 S.W.2d 472, 477 (Tex. App.—Dallas 1998, pet. denied); Md. Cas. Co. v. Crazy Water Co., 160
S.W.2d 102, 104 (Tex. Civ. App.—Eastland 1942, no
writ).  Under the case law, a
“professional service” is more than an act flowing from mere employment.  Atlantic
Lloyd’s, 982 S.W.2d at 477.  “We do
not deem an act a professional service merely because it is performed by a
professional.  Rather, it must be
necessary for the professional to use his specialized knowledge or
training.”  Id.  For the DTPA exemption, the essence of the
professional service provided must be advice, judgment, opinion, or similar
professional skill.  Tex. Bus. & Com. Code Ann. §
17.49(c).  Reflecting this view of a
professional service in the context of the DTPA is Cole v. Central Valley Chems., Inc., 9
S.W.3d 207, 210 (Tex. App.—San Antonio 1999, pet. denied).  In Cole,
a farmer sued a herbicide seller for misrepresentation of the benefits of a
weed killer.  The court held that the
basis of the suit was the purchase of weed killer, not the rendering of a
professional service.  Id.

    In this case, Poe & Brown argues in its
motion that the certificate of insurance faxed to Omni “was simply giving its
judgment or opinion that the policy listed . . . provided coverage.”  However, Poe & Brown fails to point to
proof that in providing the certificate, it was providing “advice, judgment,
opinion, or similar professional skill.” 
There is no evidence of specialized knowledge or training that would
make faxing the certificate and the information on it a professional service
instead of a mere act of employment. 
Additionally, Omni sued for failure to disclose under section
17.46(b)(23) of the DTPA, and the professional service exemption does not apply
to such a claim.  Tex. Bus. & Com. Code Ann. § 17.49(c)(2).  For these reasons, Poe & Brown failed to
meet its burden to earn summary judgment based on the professional services
exemption to the DTPA.  

    Accordingly, because section 17.49(c) became
effective after this case was apparently filed and because Poe & Brown did
not conclusively establish its entitlement to summary judgment under the
professional services exemption, we sustain issue five. 

                                                      VII. 
CONSUMER STATUS

    In its sixth issue, Omni argues the trial
court erred in granting summary judgment on its DTPA claims because privity is not required to be a consumer within the meaning
of the statute.  In one paragraph in its
motion for summary judgment, Poe & Brown argued that Omni was not a
consumer because it did not purchase or lease goods or services from Poe &
Brown.  It offered no case law in support
of its argument.  Its appellate briefing
is similarly devoid of case law and argument about Omni’s consumer status. 

    Omni brought its DTPA-based claims through
article 21.21 of the Insurance Code.  Tex. Ins. Code Ann. art. 21.21, § 16(a)
(Vernon Supp.
2002).  Article 21.21, section 16(a),
provides a cause of action for “unlawful deceptive trade practice[s]” defined
under the laundry list of DTPA section 17.46(b).  Article 21.21 does not require consumer
status to bring a DTPA-based cause of action. 
Crown Life Ins. Co. v. Casteel,
22 S.W.3d 378, 386 (Tex.
2000).  “But if the terms of a subsection
of DTPA section 17.46(b) require consumer status, then consumer status is
required to bring an action under article 21.21 for its violation.”  Id.  

    Omni pleaded violations of DTPA section
17.46(b)(5), (7), (12), and (23).  By
their terms, subsections (5), (7), and (23) require consumer status.  Id. at
387.  However, subsection (12) does not
require consumer status.  Id.  Because consumer status is not required, the
trial court erred in granting summary judgment on Omni’s claim for violation of
DTPA section 17.46(b)(12).

    For the remaining DTPA provisions pled by
Omni, we must determine whether consumer status requires direct purchase or
lease of services from Poe & Brown. 
“Privity of contract with a defendant is not
required for the plaintiff to be a consumer.” 
Amstadt v. U.S. Brass Corp., 919 S.W.2d 644,
649 (Tex.
1996).  Further, “[t]he consumer does not
have to be the actual purchaser of the insurance in order to be classified as a
consumer under the DTPA.”  HOW Ins. Co. v. Patriot Fin. Serv. of Tex., Inc., 786 S.W.2d 533, 539 (Tex.
App.—Austin 1990), overruled on other
grounds by Hines v. Hash, 843
S.W.2d 464 (Tex.
1992).  Accordingly, Omni is not denied
consumer status by lack of privity with Poe &
Brown.  The trial court erred in granting
summary judgment on this ground, and we thus sustain issue six.

                                        VIII. 
ATTORNEY’S FEES AS DAMAGES

    In its seventh issue, Omni contends the
trial court erred, if it in fact so ruled, that Omni has no cause of action to
recover attorney’s fees as damages.  Omni
incurred attorney’s fees and costs in pursuing prior litigation against the
third party on whose property the damaging fire started.  The trial court’s general order granting
summary judgment is defined by the grounds in appellees’
motions for summary judgment.  Here, Poe
& Brown did not assert that no
cause of action exists for recovery of attorney’s fees incurred in prior
litigation.[10]  We thus do not address such an issue.  See
Travis v. City of Mesquite, 830 S.W.2d 94, 100 (Tex. 1992)
(summary judgment cannot be affirmed on a ground not specifically presented in
the motion).

    What Poe & Brown actually contended was
that it committed no “wrongful act” that would entitle Omni to recover its
prior litigation fees.[11]  As we have already addressed in this opinion,
summary judgment was improper on Omni’s claims. 
Accordingly, there remain fact issues about whether Poe & Brown’s
acts were wrongful.  Thus, on the ground
presented in Poe & Brown’s motion, it was error to grant summary judgment
on Omni’s claims for prior litigation attorney’s fees.  Accordingly, we sustain issue seven.

                              IX. 
TRANSCONTINENTAL’S AGENCY LIABILITY

    Lastly, in its briefing, Transcontinental
urges that Poe & Brown was not its agent and that it cannot be held liable
for Poe & Brown’s actions. 
Transcontinental did not urge this argument in its motion for summary
judgment.  The motion itself must
expressly present the grounds on which it is made.  McConnell
v. Southside I.S.D., 858 S.W.2d 337, 341 (Tex.
1993).  We cannot affirm a summary
judgment on a ground not specifically presented in the motion for summary
judgment.  Travis, 830 S.W.2d at 100.

    In conclusion, we hold that the trial court
erred in granting summary judgment on Omni’s claims.  Accordingly, we reverse and remand for
further proceedings.

 

                                                                                     

                                                             /s/                    Charles W. Seymore

                                                                                     Justice

 

Judgment rendered and
Opinion filed June 13, 2002.

Panel consists of Chief
Justice Brister and Justices Fowler and Seymore.

Do Not Publish — Tex. R. App. P. 47.3(b).






 



 




 



 

 

 

 











    [1]  We note that this is Omni’s version of the facts, taken in the light
most favorable to it as nonmovant. 





    [2]  See Exhibit 1 (the 1992 certificate of insurance).





    [3]  See Exhibits 2 (the 1994 certificate of insurance) and 3 (the 1995
certificate of insurance).





    [4]  See Exhibit 1.





    [5]  See Exhibit 3.





    [6]  Pre-printed portions of the certificate read, “[T]he insurance afforded
by the policies described herein is subject to all the terms, exclusions[,] and
conditions of such policies” and “[t]his certificate does not amend, extend, or
alter the coverage afforded by the policies below.”





    [7]  The Frith
court set out factual allegations in a previous order, which is unfortunately
not published.  See Frith, 9 F. Supp.2d at 744.





    [8]  Restatement (Second) of Torts section 552(2) describes those who may
sue a person for negligent misrepresentation:

 

(a) . . . the person or one
of a limited group of persons for whose benefit and guidance he intends to
supply the information or knows that the recipient intends to supply it; and

 

(b) through reliance upon it
in a transaction that he intends the information to influence or knows that the
recipient so intends or in a substantially similar transaction. 





    [9]  The original petition is not included in the appellate record so that
we may verify the date of filing. 
Additionally, Omni has never argued that it filed its case before the
effective date of the professional services exclusion.   





    [10]  Only Poe & Brown moved for summary judgment on the issue of attorney’s
fees as damages.





    [11]  See Baja Energy, Inc. v.
Ball, 669
S.W.2d 836, 839 (Tex. App.—Eastland 1984, no writ) (“Courts have also allowed
recovery for attorney’s fees and other litigation expenses of a previous suit
where a party was required to prosecute or defend the previous suit as a
consequence of the ‘wrongful act’ of the defendant.”).  But see
Martin-Simon v. Womack, 68 S.W.3d 793, 797–98 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied) (declining to adopt wrongful-act exception to allow recovery of
attorney’s fees).