IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 2, 2008

Charles R. Fulbruge III
Clerk

No. 07-40727

DAVIS-RUIZ CORPORATION, doing business as Advantage Inspection

Plaintiff - Appellant

v.

MID-CONTINENT CASUALTY COMPANY

Defendant - Appellee

MID-CONTINENT CASUALTY COMPANY

Plaintiff - Counter-Defendant - Appellee

v.

DAVIS-RUIZ CORPORATION, doing business as Advantage Inspection

Defendant - Counter-Claimant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:06-CV-00350
USDC No. 2:06-CV-00315

Before SMITH and PRADO, Circuit Judges, and LUDLUM, District Judge.[*]

[*] District Judge of the Western District of Texas, sitting by designation.

PER CURIAM:[**]

This case involves a dispute between a third-party defendant in a lawsuit and the third-party defendant's insurer concerning whether the insurer has a duty to defend the third-party defendant in the suit against it. The district court granted summary judgment in favor of the insurer, finding that there was no duty to defend because none of the claims against the third-party defendant were covered under its insurance policy. For the following reasons, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 17, 2002, Lang Williamson ("Williamson") was injured while working on a storage tank belonging to Marathon Ashland Petroleum ("Marathon"). He alleged that the ladder attached to the tank broke while he was standing on it, causing him to fall and sustain injuries. Williamson sued Marathon in Illinois state court ("the Williamson suit"), alleging that Marathon acted negligently by, inter alia, failing to provide Williamson with a safe workplace, failing to properly inspect the ladder for defects, failing to warn Williamson of the dangerous conditions existing on the storage tank, and failing to supervise its subcontractors in connection with services performed under various contracts.

After Williamson sued Marathon, Marathon filed a third-party complaint against Appellant Davis-Ruiz Corporation, d/b/a Advantage Inspection ("Advantage"), the company that had inspected the storage tank and ladder, seeking contribution and indemnity for Williamson's claims. In the third-party complaint, Marathon alleged that on October 14, 2002, pursuant to a contract

---

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

with Marathon (the "Services Contract"), Advantage had inspected the storage tank and ladder at issue in the Williamson suit and submitted a form to Marathon indicating that the ladder had been inspected and was "acceptable." Marathon also listed the allegations Williamson had made against it and specifically alleged that several of them related to the inspection of the ladder: the claims of failure to properly inspect the ladder, failure to warn of the dangerous conditions existing on the storage tank, failure inspect the work site for safety, and failure to ensure that the ladder was properly maintained. Marathon claimed it was entitled to contribution because of Advantage's negligence and because Advantage violated the Services Contract, in which Advantage promised to furnish experienced personnel and supervision, assumed responsibility for the quality of its work, and asserted that it was experienced and possessed the skills and resources to perform its work. Marathon also sought express indemnity under indemnification provisions in the Services Contract and implied indemnity under Illinois law.

After Advantage was named as a third-party defendant in the Williamson suit, Advantage requested that its insurer, Appellee Mid-Continent Casualty Company ("Mid-Continent"), defend it in the suit. Advantage holds a general commercial liability policy issued by Mid-Continent (the "policy"). Mid-Continent refused to defend Advantage, claiming that three exclusions in the policy applied to the claims against Advantage and thus it had no duty to defend. Both Mid-Continent and Advantage then filed lawsuits, and the lawsuits were eventually consolidated in federal court.[1] By agreement of the parties, the district court converted the parties' pleadings into competing motions for

---

[1] Mid-Continent originally filed an action in federal court seeking a declaratory judgment that it had no duty to defend or to pay money. Advantage originally filed a complaint in Texas state court alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices and Consumer Protection Act. Advantage's action was removed to federal court, and the district court consolidated the two actions.

summary judgment on the issue of Mid-Continent's duty to defend Advantage. The district court held that under the terms of the insurance policy, all of Marathon's claims against Advantage were excluded from coverage by a single exclusion, the Designated Professional Services exclusion, and thus Mid-Continent had no duty to defend Advantage. The court granted summary judgment in favor of Mid-Continent, and Advantage appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. This court has jurisdiction over this appeal under 28 U.S.C. § 1291. This court reviews a grant of summary judgment de novo. Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 700 (5th Cir. 1996). The district court's interpretation of an insurance contract is a question of law that this court also reviews de novo. Id.

## III. DISCUSSION

A. Applicable law

The parties agree that Texas law applies to this case. To determine whether an insurer has a duty to defend its insured, Texas courts follow the "eight corners" or "complaint allegation" rule. Id. at 701; GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). Under this rule, we consider only two documents in determining whether there is a duty to defend: the policy and the pleadings of the third-party claimant. GuideOne, 197 S.W.3d at 308. The insurer has a duty to defend "as long as the complaint alleges at least one cause of action within the policy's coverage." Canutillo, 99 F.3d at 701. In applying the eight corners rule, Texas courts liberally construe allegations in favor of the insured. GuideOne, 197 S.W.3d at 308. Finally, Texas courts "resolve all doubts regarding the duty to defend in favor of the duty." King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002).

In interpreting an insurance contract, Texas courts use general rules of contract interpretation. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). To determine the scope of coverage, courts "examine the policy as a whole to ascertain the true intent of the parties." Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004). In construing policy language, the court should read the policy as a whole and "must give effect to all contractual provisions so that none will be rendered meaningless." Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003); see also Tex. Farm Bureau Mut. Ins. Co. v. Sturrock, 146 S.W.3d 123, 134 (Tex. 2004). Texas courts do not favor exclusions from coverage and will strictly construe them against the insurer. State Farm Lloyds v. Marchetti, 962 S.W.2d 58, 61 (Tex. App. 1997). In construing an exclusionary clause susceptible of more than one reasonable interpretation, "[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991); see also Utica, 141 S.W.3d at 202.

B.   Whether any of the claims against Advantage are covered under the policy

Advantage essentially makes three arguments in support of its assertion that Marathon has alleged covered claims against it. First, Advantage asserts that the claims based on its allegedly defective inspection services are covered by the policy and do not fall within any of the policy's services-related exclusions. Second, Advantage contends that some of the claims against it are not based on its inspection services at all and thus could not possibly be excluded by the services-related exclusions. Third, Advantage argues that the express indemnity claim against it is covered because it falls within the "insured contract"

exception to the contract liability exclusion. Because we agree with Advantage's first argument and find that at least some of the services-related claims against Advantage are covered, we need not address its second and third arguments.

Mid-Continent does not dispute that the claims based on Advantage's inspection services fall within the policy's general coverage provision.[2] However, Mid-Continent maintains that the district court properly found that the Designated Professional Services exclusion applies to all of the claims against Advantage. In addition, in Mid-Continent's letter denying coverage to Advantage, Mid-Continent cited two additional exclusions related to claims based on services: the Professional Liability endorsement's exclusion for claims based on express or implied warranties, and the Testing or Consulting Errors and Omissions exclusion. We examine each of the three possibly relevant exclusions to determine whether the policy covers the claims against Advantage.

    1.    The Designated Professional Services exclusion

This exclusion provides, in relevant part,

---

[2] This provision states,

> [Mid-Continent] will pay those sums as the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Mid-Continent] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Mid-Continent] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . This insurance applies to "bodily injury" and "property damage" only if [] [t]he "bodily injury" or "property damage" is caused by an "occurrence" that takes place in "coverage territory."

The policy defines "occurrence" generally as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

SCHEDULE

Description of Professional Services:


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, the following exclusion is added to [the policy's list of exclusions]:

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" due to the rendering of or failure to render any professional service.

The district court read this exclusion as applying to all bodily injury arising from the rendering or failure to render any "professional service." The court noted that although the term "professional service" is not defined in the policy, the term has been given meaning by Texas courts:

> [A] professional must perform more than an ordinary task to perform a professional service. To qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation. We do not deem an act of professional service merely because it is performed by a professional. Rather, it must be necessary for the professional to use his specialized knowledge or training.

Atl. Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P., 982 S.W.2d 472, 476-77 (Tex. App. 1998). The district court concluded that under the Texas courts' definition, Advantage's inspection of the tank and ladder was a professional service. The court held that because Marathon's allegations were all based on Advantage's inspection of the tank and ladder, Marathon's claims were all excluded by the Designated Professional Services exclusion.

Advantage argues that in holding that the Designated Professional Services exclusion applies to any "professional service," the district court

overlooked a key part of the exclusion. We agree. When read in full, the exclusion states, "With respect to any professional services shown in the Schedule . . . [t]his insurance does not apply to 'bodily injury' . . . due to the rendering of or failure to render any professional service." (emphasis added). Thus, the exclusion does not apply to all professional services, but only to those shown in the Schedule. The space in the Schedule following "Description of Professional Services" is left blank. However, below the blank space, the exclusion states, "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." Thus, we must look to the Declarations, not to the general meaning of "professional services," to determine which professional services are within the scope of the exclusion.[3] See, e.g., Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 13 (Tex. 2007) (emphasizing that the duty to defend must be determined based on "the policy's actual language").

Unfortunately, neither the Commercial General Liability Coverage Part Declaration (the "CGL Declaration") nor the Policy Declaration applicable to the entire policy (the "General Declaration") provides a clear list of the professional services to which this exclusion applies. They both describe Advantage's business as follows: "Business Description: Radi[o]grapher Program."[4] In addition, the CGL Declaration contains a listing of Advantage locations and uses the language "Pipe Testing & Consultant" in reference to Advantage. The

---

[3] We note that although Advantage articulated this position in its briefs and at oral argument, Mid-Continent has offered no response. Instead, it mischaracterizes Advantage's position as being that the term "professional services" is vague and ambiguous. It then repeats the district court's rationale for why the exclusion should be interpreted to include the services at issue here.

[4] A "radiograph" is "[a]n image produced on a radiosensitive surface, such as a photographic film, by radiation other than visible light, especially by x-rays passed through an object or by photographing a fluoroscopic image." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000).

General Declaration also lists by number twenty-nine forms and endorsements to be included in the policy.

Advantage contends that because both Declarations describe Advantage's business as a "Radi[o]grapher Program" and mention no other professional services,[5] the Declarations should be read as limiting the exclusion's applicability to those professional services that involve radiography. We find this to be a reasonable interpretation of the exclusion, given the exclusion's directive that the Declarations will contain the information required to complete the endorsement. We also note that Mid-Continent offers no interpretation other than the one offered by the district court, nor can we identify any reasonable alternative interpretation. We therefore adopt Advantage's interpretation of the exclusion and find that the exclusion applies only to claims related to professional services that involve radiography. See Utica, 141 S.W. 3d at 202 (quoting Hudson Energy Co., 811 S.W.2d at 555) ("The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable."). The inspection of the storage tank and ladder that underlies the claims against Advantage involved only visual inspection, not radiography. Thus, although the inspection may have been a professional service, it was not among those professional services described in the exclusion, and the exclusion does not bar coverage of any of the claims against Advantage related to the inspection.

2.      The Professional Liability endorsement's exclusion

The Professional Liability endorsement states that "'Bodily injury' or 'property damage' arising out of the rendering or failure to render professional services as described shall be deemed to be caused by an 'occurrence,'" thereby

---

[5] With regard to the use of the language "Pipe Testing & Consultant" in reference to Advantage, Advantage states that testing and consulting with respect to pipes are typically the subject of radiographic analysis and in any case have nothing to do with the visual inspection of a tank and ladder at issue in this case.

extending coverage to claims related to those professional services. The professional services described in the endorsement are "Testing & Consulting." However, the endorsement excludes coverage for "[e]xpress or implied warranties or guarantees." Advantage acknowledges that some of Marathon's claims against it might involve a breach of warranty—for example, the claim that Advantage violated the Services Contract, in which it asserted that it was experienced in its work and possessed the skills and resources to perform its work. However, it contends that other claims plainly do not involve warranties—for example, failure to properly inspect the ladder, failure to warn Marathon of dangerous conditions on the storage tank, and failure to ensure that the ladder was properly supported, repaired, and maintained.

Mid-Continent offers no arguments in favor of finding that this exclusion applies to Marathon's claims. We agree with Advantage that on their face, the allegations of failure to inspect and failure to warn do not appear to involve "express or implied warranties." Construing them to do so would be inappropriate, especially given that this court is required to "resolve all doubts regarding the duty to defend in favor of the duty." King, 85 S.W.3d at 187. Thus, this exclusion does not bar coverage of all of the claims based on Advantage's inspection services.

3.    The Testing or Consulting Errors and Omissions exclusion

The Testing or Consulting Errors and Omissions exclusion ("Testing or Consulting exclusion") provides,

> This insurance does not apply to "bodily injury", "property damage"
> or "personal and advertising injury" arising out of:
>    1.    An error, omission, defect or deficiency in:
>       a.    Any test performed; or
>       b.    An evaluation, a consultation or advice given, by
>             or on behalf of any insured;
>    2.    The reporting of or reliance upon any such test,
>          evaluation, consultation or advice; or

> 3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

The policy does not define "test," "evaluation," or "consultation," and Mid-Continent offers no arguments in favor of finding that those terms cover the inspection at issue here. Under at least some definitions of those terms, however, this exclusion might be interpreted to encompass the visual inspection of the storage tank and ladder.[6] Thus, were we to interpret this exclusion, standing alone, based only on a broad reading of its plain language, we might determine that it barred coverage of the claims related to Advantage's visual inspection of the storage tank and ladder. However, "[i]n addition to applying the plain meaning of the policy's language, we must also read the policy as a whole, giving effect to each provision." Schaefer, 124 S.W.3d at 159.

Here, a broad reading of the Testing or Consulting exclusion that encompasses all testing and consulting is impossible to reconcile with the rest of the policy. The Professional Liability endorsement extends coverage, subject to certain specified exclusions, to "'bodily injury' or 'property damage' arising out of the rendering or failure to render professional services as described." That endorsement describes the professional services as "testing and consulting." Therefore, if we construed the Testing and Consulting exclusion as barring coverage of claims based on any "testing" or "consulting," the Professional Liability endorsement would have no effect whatsoever, and the coverage it purports to extend would be illusory. Texas courts disfavor such constructions. See ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co., 185 S.W.3d 440, 444 (Tex. 2005) (adopting the insured's construction of an exclusion because the insurer's

---

[6] The dictionary definitions of "test" include "a procedure for critical evaluation; a means of determining the presence, quality, or truth of something." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000). The definitions of "evaluate" include "To ascertain or fix the worth of" and "To examine and judge carefully; appraise." Id. The definitions of "consult" include "To seek advice or information of," "To refer to," and "To take into account." Id.

interpretation "would render coverage under [an] endorsement largely illusory"); Sturrock, 146 S.W.3d at 134 (interpreting "motor vehicle accident" to apply to a person's tripping over the threshold of the door of a pickup truck, in part because to exclude such accidents "would render the definition of 'covered person' meaningless, which is contrary to basic rules of contract interpretation"); Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 828 (Tex. 1997) (rejecting a proposed interpretation in part because it "would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance").

Advantage proposes that in order to harmonize the Testing or Consulting exclusion with the Professional Liability endorsement, we should read the exclusion as applying only to those testing and consulting services that do not rise to the level of "professional" testing and consulting services. After considering the policy as a whole, we find that applying that interpretation is a reasonable way of giving effect to both the Testing or Consulting exclusion and the Professional Liability endorsement. Because we "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent," Hudson Energy Co., 811 S.W.2d at 555, we adopt Advantage's construction. Under this reading, the inspection at issue here is not excluded: as the district court found and both parties agree, the inspection at issue here involved "professional services" as defined by Texas law.

In sum, none of the three services-related exclusions, either alone or in concert, exclude all of the claims against Advantage that are based on its inspection services. Thus, we need not address whether Marathon also alleged non-services related claims not covered by the exclusions or whether the express indemnity claim is covered under an exception to the insured contract exclusion.

12

## IV. CONCLUSION

The district court erred when it applied the Designated Professional Services exclusion to Marathon's claims against Advantage. Moreover, no other policy exclusions exclude all of the claims against Advantage. Therefore, Mid-Continent has a duty to defend Advantage. Accordingly, we REVERSE the district court's grant of summary judgment and REMAND for further proceedings.

REVERSED and REMANDED.