# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 21, 2010

No. 09-50671

Lyle W. Cayce
Clerk

ADMIRAL INSURANCE COMPANY,

Plaintiff - Appellant

v.

RANDALL K. FORD, doing business as R. K. Ford and Associates; R. K. FORD & ASSOCIATES INCORPORATED; RKF CONSULTANTS INCORPORATED, doing business as R. K. Ford & Associates,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY and GARZA, Circuit Judges, and STARRETT[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Appellant Admiral Insurance Company ("Admiral") appeals from the district court's grant of summary judgment in favor of Appellees ("Ford"). The appeal asks us to determine the applicability of a professional services exclusion in an insurance contract that Admiral sold to Ford.

I

Ford purchased two insurance policies from Admiral. The Commercial General Liability ("CGL") policy provided occurrence-based coverage with a $1

[*] District Judge of the Southern District of Mississippi, sitting by designation.

No. 09-50671

million limit per occurrence. The professional liability ("PL") policy provided "claims-made" coverage, which covered "oil and gas consultant" operations with a $50,000 limit per claim.

The CGL policy contained an exclusion for designated professional services. This exclusion provides, in relevant part:

**SCHEDULE**

Description of Professional Services:
1. ALL OPERATIONS OF THE INSURED
2.
3.

(If no entry appears above, the information to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional service.

After Ford purchased the policies, Exco Resources, Inc. ("Exco") hired Ford to create a drilling plan for an oil well and to consult and assist in the drilling of the well. During drilling, the well had a blowout, and Exco sued Ford. Admiral paid Ford $50,000 pursuant to the PL policy, then filed the instant lawsuit for a declaratory judgment that it did not owe Ford any coverage under either the CGL or the PL policy.[1] Admiral claimed that the professional services exclusion to the CGL excludes coverage for Exco's lawsuit because the underlying conduct required Ford's specialized or technical knowledge. Ford responded that because the professional services exclusion purports to apply to

---

[1] Admiral has abandoned its effort to have the $50,000 paid pursuant to the PL policy reimbursed.

2

No. 09-50671

"all operations of the insured," the exclusion destroyed any grant of CGL coverage, and therefore should not be given effect.

On cross-motions for summary judgment, the district court ruled in favor of Ford, finding that the professional services exclusion was illusory because it defined professional services as all operations of the insured. The court found that this broad description of professional services obliterated the entire insurance policy, and gave the exclusion no effect. It found that Admiral owed a duty to defend Ford in the underlying lawsuit. Admiral timely appealed.

The Exco litigation was settled before oral argument of this case. A justiciable controversy remains, however, regarding Admiral's duty to defend since the determination of that duty affects the legal fees expended in defense of the Exco litigation before it was settled.[2]

## II

This Court reviews the district court's grant of summary judgment de novo. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001) (citing *McClendon v. City of Columbia*, 258 F.3d 432, 435 (5th Cir. 2001)). "The district court's interpretation of an insurance contract is a question of law that we also review de novo." *Id.* Because this is a diversity case involving a Texas contract, "Texas rules of contract interpretation control." *Id.* (citation omitted).

## III

## A

Admiral argues that the "all operations" language does not define professional services, but rather provides the scope of the exclusion. According to Admiral, the "all operations" language simply means that the parties intended the legal definition of professional services to exclude coverage for professional services in any of Ford's operations. Admiral urges the court to apply the legal

---

[2] Although both parties address the duty to indemnify in their briefing, the indemnity issue is not before the court because the district court severed it from the instant appeal.

definition of professional services, as articulated by Texas courts, which would limit professional services to those that require the professional's "specialized knowledge or training." In response, Ford essentially relies on the district court's plain language reading, urging the court not to "re-write" the exclusion.

Texas law instructs that we are to ascertain the scope of coverage by examining the policy as a whole and determining the parties' intent. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). "'The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). Terms are given their ordinary meaning unless the insurance policy shows that the words were meant in a technical or different sense. *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385 (Tex. App.—Fort Worth 2009, no pet.). The court, however, must "read all parts of the contract together . . . striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (citations omitted).

Ford's plain language argument, though simple, is nonetheless strange. In effect, Ford reads the exclusion so broadly as to defeat any coverage, and then claims that because the coverage is rendered illusory under this broad interpretation, the exclusion should be given no effect. Whereas normally the insured advances an interpretation that provides broader coverage, here Ford's interpretation of the exclusion is that all of its operations are excluded from coverage. Needless to say, it is difficult to understand why Ford would purchase a policy that it believed to exclude all of its operations from coverage.

Courts analyzing insurance contracts with essentially the same format as the instant contract have not accepted the phrase following "description of

4

professional services" as the definition of professional services.[3]  For example, in *Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476–77 (Tex. App.—Dallas 1998, pet. denied), the insured, a law firm, had written a description of its practice following the phrase "[d]escription of professional services." *Id.* at 476.  Nonetheless, the court surveyed how other courts had defined "professional services" before settling on a legal definition. *Id.*  The court found that "[t]o qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training." *Id.* at 476–77.

Although Texas courts have often applied a legal definition of "professional services" in the context of a professional services exclusion to an insurance contract, the district court found that a recent decision of this court prevented it from applying the legal definition of professional services.  The district court stated that *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 272 (5th Cir. 2008) (unpublished) (per curiam), mandates that if the term "professional services" is not defined in the policy, then "as a matter of law, no court can determine if 'professional services' were rendered."  The district court, however, misinterpreted *Davis-Ruiz*.

In *Davis-Ruiz*, the parties disputed an identical professional services exclusion except in that case, the area under "Description of Professional Services" was blank.  281 F. App'x at 271–72.  The court then looked to the specific instruction of the professional services exclusion, which said "if no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." *Id.* at 272.  Accordingly,

---

[3] *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Amwest Fin., Inc.*, No. Civ. H-04-4024, 2005 WL 1994290, at *1–2, *7 (S.D. Tex. Aug. 17, 2005) (interpreting an identical schedule with the description "financial lender").

the court looked to the Declarations, concluding that the exclusion should be applied to the insured's business as defined in the Declarations. *Id.* Although there was no specific definition of professional services in the contract, the court applied the legal definition of professional services to the insured's business. *Id.*

*Davis-Ruiz* does not suggest that a court may only look to the contract to define "professional services." Using the legal definition of "professional service" was not an issue. At issue was to which of the insured's operations the exclusion applied. *Id.* at 271–72 ("[T]he exclusion does not apply to all professional services, but only to those shown in the Schedule[, which limited the exclusion to those professional services that involved radiography]."). When the policy does not specify a definition of professional services, a court is free to apply the legal definition of "professional services" to the exclusion, and Texas courts, as well as courts interpreting Texas law, often do so.

In conclusion, although the provision is confusingly worded and a literal interpretation would imply that "all operations" are excluded as professional services, the literal interpretation is unreasonable. Admiral has advanced the only reasonable interpretation of the exclusion: that the parties intended the legal definition of professional services to exclude coverage for professional services in any of Ford's operations.

B

Having determined that the professional services exclusion is operative, we now turn to whether the exclusion defeats coverage. The parties dispute whether Exco's allegations against Ford meet the legal definition of "professional services." Admiral argues that the underlying suit is based only on Ford's failure to use his specialized or technical knowledge in preparing and implementing the drill plan. Ford responds that some of Exco's allegations are not based on specialized knowledge, and thus fall outside the professional services exclusion, thereby triggering Admiral's duty to defend.

No. 09-50671

In determining the applicability of a professional services exclusion, Texas courts apply the "eight corners rule." They look only to the four corners of the policy and the four corners of the underlying complaint to determine whether a duty to defend exists. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The court must focus on the factual allegations in the underlying pleading rather than the legal theories alleged. *Id.* If the pleading contains allegations that, when fairly and reasonably construed, state a cause of action that is potentially covered by the policy, then the insurer has a duty to defend the insured in the underlying lawsuit. *Id.* at 142. "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend the suit against its insured." *Stumph v. Dallas Fire Ins. Co.*, 34 S.W.3d 722, 728 (Tex. App.—Austin 2000, no pet.) (citation omitted).

Since the insurance contract does not define professional services, the relevant definition is that provided by Texas law:

> [T]he task must arise out of acts particular to the individual's specialized vocation, [and] . . . it must be necessary for the professional to use his specialized knowledge or training.

*Susman Godfrey,* 982 S.W.2d at 476–77.

The relevant pleading from the underlying suit is the Fourth Amended Petition, which alleges breach of contract against Ford for failing to prevent the blowout. Exco alleges that Ford breached the contract with Exco by failing to "properly inspect the drill pipe for casing wear as it was pulled out of the hole," "instruct the mud logger to look for and report metal shavings," and "use 'ditch magnets,' a device that detects and segregates metal from the mud." Exco's Fourth Amended petition also states that "[n]ot all operations of Ford were professional in nature. While several of the above-described omissions made by Ford required the use of Ford's specialized training, certain of the omissions and

7

failures to act were done with no necessary professional knowledge and were outside of Ford's professional capacity."

Initially, we note that we are not bound by Exco's self-serving statement that not all of Ford's operations were professional in nature. We need not accept Exco's legal characterization, only its factual allegations. *See Merchs. Fast Motor Lines*, 939 S.W.2d at 141. Indeed, whether or not Ford's alleged operations were professional in nature is the very question we must answer.

Ford characterizes Admiral's argument as stating that even actions that do not require the exercise of specialized knowledge constitute "professional services" if they occur in the course of implementing a drilling plan. Ford correctly points out that Texas courts have rejected a status-based approach to determining if an allegation should be considered a professional service. Ford cites to *Utica*, 141 S.W.3d 198, as "most closely on point." According to Ford, *Utica* compels a conclusion that some of the allegations involve non-professional conduct, thereby triggering coverage.

*Utica* involved a claim against an association of doctors by numerous plaintiffs who contracted Hepatitis C from contaminated drugs. *Id.* at 200. The drugs were contaminated by a technician who had used them to support his drug addiction and then filled the bottles with saline to hide the theft. *Id.* Although the complaint alleged negligence in both securing and administering the drugs, the court did not address whether the failure to secure the drugs constituted a failure in professional services because the insurer conceded for purposes of the appeal that the failure to secure the drugs would implicate a general rather than professional duty. *Id.* at 202 n.3. Thus, contrary to Ford's presentation, *Utica* does not address the question presented by this case.

Although the other cases Ford cites are more relevant, they do not necessarily support a conclusion that coverage exists. For example, in *Guaranty National Insurance Co. v. North River Insurance Co.*, 909 F. 2d 133, 135 (5th Cir.

1990), this court held that a professional services exclusion did not bar coverage when the complaint alleged that a hospital failed to properly secure windows to prevent escape or suicide. Although this holding indicates that not all of a professional's actions are "professional services," it says little about whether the allegations in the instant case are akin to securing a window. Likewise, in *Aetna Fire Underwriters Insurance Co. v. Southwestern Engineering Co.*, 626 S.W.2d 99 (Tex. App.–Beaumont 1981, writ ref'd n.r.e.), when a pipeline was damaged, the court found coverage because it could not determine whether the error was from bad plans (professional service) or bad digging (non-professional in nature). The case supports the idea that a professional services exclusion does not bar coverage when some of the allegations involve professional services and others do not: it says little about how the activities alleged by Exco should be classified.

Aside from Exco's bald statement that certain (unspecified) acts were non-professional, the only arguably non-professional conduct alleged was failing to look for metal shavings or to use a magnet to detect shavings in mud. The actual performance of these acts is perhaps akin to conduct that we have found to be non-professional. But Exco is not suing Ford because Ford was told to watch for pipe wear and metal shavings and failed to do so. Rather, the complaint is that Ford failed to act upon its specialized knowledge that those tasks needed to be performed (*i.e.*, Ford failed to instruct the mud logger to look for shavings). Indeed, the specific failures are listed as sub-parts of a general failure "to perform adequate and competent drilling operations." In other words, the allegations are not that Ford incorrectly performed some non-professional activity, but that Ford failed to properly implement a plan to drill a well over 16,000 feet deep.

Ultimately, the underlying suit alleges the existence of and failure to fulfill a contract, the very subject of which was Ford's expertise in drilling operations. Ford essentially argues that a claim that a party caused injury by negligently

No. 09-50671

performing its professional services is not covered by a professional services exclusion because some of the breaching conduct was arguably non-technical in nature. As Admiral points out, this reading of the exclusion renders it almost meaningless since the implementation of a drilling plan invariably involves menial tasks. Ford was tasked with ensuring that the well did not blow out. Taking, or not taking, certain measures to ensure that the drill pipe did not fail under the particular drilling conditions requires Ford's specialized knowledge and training, and thus is an excluded professional service.[4]

IV

Because we conclude that the professional services exclusion applies and that Admiral has no duty to defend under the CGL policy, the judgment of the district court is REVERSED and RENDERED.

---

[4] In its motion for summary judgment, Admiral also argued that no coverage was available under either the excess or umbrella policies. The excess coverage does not apply to "any loss not covered by the underlying insurance." The umbrella policy "applies only to the exposures that are not covered by the [excess coverage] and are not otherwise excluded by this policy or any of the underlying policies." Because we hold that the professional services exclusion defeats coverage in the underlying CGL policy, we likewise find no coverage under either the excess or umbrella policies.