**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 9, 2012

Lyle W. Cayce
Clerk

No. 11-30375

NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA,

Plaintiff - Appellee,

v.

GULF ISLAND FABRICATION, INC.,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-5884

Before STEWART, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee, National Union Fire Insurance Company of Pittsburgh ("National Union"), brought this declaratory judgment action against its insured, Defendant-Appellant, Gulf Island Fabrication, Inc. ("GIF"), after the parties became involved in an insurance coverage dispute arising out of a $110,000,000 insurance policy. GIF filed counterclaims against National Union and the parties agreed to file cross-motions for summary judgment in lieu of trial. The district court granted summary judgment in favor of National Union and against

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30375

GIF, dismissing its counterclaims in all respects. For the reasons stated herein, we AFFIRM.

## I.

On April 29, 2008, an accident occurred at GIF's heavy steel fabrication facility in Aransas Pass, Texas. The facility was being operated by Gulf Marine Fabrication ("GMF"), a subsidiary of GIF, at the time of the accident. Four cranes were being used to lift a piece of machinery which was being used to construct an offshore graving dock when one of the cranes (referred to herein as the "C-1 crane") side-loaded and collapsed. As a result of the collapse, the cab of the C-1 crane was crushed, killing the crane operator inside, and the other three cranes were substantially damaged.

Shortly thereafter, GMF rented substitute cranes while repairs were being performed on the damaged cranes, ultimately incurring rental expenses in the approximate amount of $11,117,838. After the accident, GIF began submitting insurance claims to National Union, which dispatched an independent adjuster, Ronald Crow of McLain Crow & Associates, to handle GIF's claims. National Union authorized Mr. Crow to retain a forensic accountant, Ruben Castilla of RGL Forensics, to assist in the matter.

The insurance policy between the parties in effect at the time of the accident contained a coverage period from April 15, 2008 through April 15, 2009, with a liability limit of $110,000,000. GIF's insurance broker at this time was Willis of Louisiana, Inc. ("Willis"). The 2008-09 policy was a renewal of the prior year's policy between the parties and contained the following Rental Reimbursement endorsement:

> If a limit of insurance is shown on the Declarations for Rental Reimbursement, we will reimburse you for expenses actually incurred for the rental of substitute equipment when such rental is:

No. 11-30375

1. Necessary due to "loss" to scheduled Covered Property by a covered cause of loss, and

2. Substitute equipment is needed to continue, as nearly as practicable, the normal operations on work in progress at the time of "loss," and

3. When you do not have ideal equipment available which can perform functions similar to the Covered Property that sustained the "loss."

Reimbursement is limited to such expense incurred during the period commencing seventy-two (72) hours after the "loss" unless another period is shown on the Declarations and coverage terminates, regardless of expiration of the policy, when the exercise of due diligence and dispatch the lost or damaged Covered Property has been replaced or repaired or the need for such equipment no longer exists, which ever first occurs.

This Company shall not be liable for more than the actual daily rental expense you incur not to exceed the limits of liability shown on the Declarations.

The prior year's policy (April 15, 2007 - April 15, 2008) contained an identical Rental Reimbursement endorsement except that it also stated on the declarations page that GIF was entitled to reimbursement for expenses actually incurred for the rental of substitute equipment up to a $450,000 coverage sublimit ($15,000 per day for a maximum of 30 days per occurrence). When the parties renewed the 2007-08 policy for the 2008-09 year, they agreed that there would be no change to the Rental Reimbursement endorsement, including the $450,000 sublimit. The language containing the $450,000 sublimit, however, was mistakenly excluded from the 2008-09 policy.

No. 11-30375

The 2008-09 policy also contained a Business Interruption expenses section with a $16,000,000 coverage sublimit. The Business Interruption expenses section stated in pertinent part:

> Interest and Property Insured
>
> This Company Agrees to insure (subject to the terms, conditions, limitations and exclusions of this Policy): This Policy covers against loss directly resulting from necessary interruption of business caused by destruction of or damage to real or personal property covered herein . . . and arising from a peril covered hereunder and occurring during the term of this Policy . . .
>
> Limitations
>
> d.    Expense Related to Reducing Loss:
>
> This Policy also covers such expenses as are necessarily incurred for the purpose of reducing loss under this Policy . . . but in no event shall the aggregate of such expenses exceed the amount by which the loss otherwise payable under this Policy is thereby reduced[.]

Finally, the 2008-09 policy contained an Extra Expense endorsement with a $5,000,000 coverage sublimit. The Extra Expense endorsement stated in pertinent part:

> The term "Extra Expense," wherever used in this Endorsement, is defined as the excess (if any) of the total cost incurred during the period of restoration chargeable to the operation of the Insured's business, over and above the total cost that would normally have been incurred to conduct the business during the same period had no damage or destruction occurred[.]

In April 2008, Mr. Crow made his initial inspection of the damage to the cranes and continued to work with GIF and Willis through the following months

4

to adjust GIF's claim. Mr. Crow was unable to inspect the C-1 crane because it had been quarantined by court order due to a pending Occupational Safety and Health Administration ("OSHA") investigation related to the death of the crane operator.

On July 3, 2008 and August 7, 2008, National Union issued Reservation-of-Rights letters which included instructions to GIF to mitigate any losses resulting from the accident. On November 8, 2008, on behalf of GIF, Willis requested that National Union make an advance payment under the policy in the amount of $4,782,000. Willis then submitted crane replacement costs in the amount of $3,459,807. In response, Mr. Crow recommended, and National Union issued, an unallocated payment of $2,000,000. Then, in January 2009, after further investigation of GIF's claims, Mr. Crow recommended, and National Union issued, a second unallocated payment of $4,500,000.

Later that year in the summer of 2009, National Union's claims handler, John Roberts, met with Mr. Crow and Mr. Castilla to review the previous accounting of GIF's claims. It was during this meeting that National Union realized that the $450,000 rental reimbursement coverage sublimit had been mistakenly left off of the 2008-09 policy. Mr. Roberts subsequently notified Mark Maxwell, the Willis claims consultant handling GIF's loss, and informed him of the $450,000 rental reimbursement sublimit and stated that no further monies were owed by National Union pursuant to the policy on GIF's claims. In response, Willis' National Property Director, David Passman, stated that he believed that other provisions in the policy could provide coverage for the crane rental expenses.

National Union then filed a declaratory judgment action in the district court seeking to reform the 2008-09 policy to include the $450,000 rental reimbursement coverage sublimit based on the evidence that both parties had intended to include it in the policy when it was renewed. National Union also

sought a declaratory judgment that it did not owe GIF any amounts in addition to what it had already paid GIF under the policy.

After National Union filed for declaratory judgment, no further adjustments were made to GIF's claims. Then, in January 2010, the C-1 crane was released from the court order that had prohibited its inspection. GIF inspected the C-1 crane and determined that it was a "constructive total loss" and, in June 2010, requested payment from National Union for the replacement cost value ("RCV") of the C-1 crane. National Union refused payment, pointed to the previous unallocated payments of $6,500,000, and asserted that the previous payments were to be used by GIF to cover the actual cash value ("ACV") of the C-1 crane, not the RCV, which meant that no further payments were owed by National Union to GIF under the policy.

Consequently, GIF filed a counterclaim to National Union's declaratory judgment action alleging that National Union breached its duties under the insurance contract by refusing to pay the RCV of the C-1 crane and, further, that National Union was liable for bad faith penalties for its mishandling of GIF's claims.

Both parties agreed to file cross-motions for summary judgment in lieu of trial with any issues not appropriate for summary judgment to proceed to a bench trial. After a hearing on the cross-motions, the district court held that the 2008-09 policy would be reformed to include the $450,000 sublimit in the Rental Reimbursement endorsement; that the sublimit limited GIF's total recovery for crane rental expenses to $450,000; that the evidence did not support GIF's claim of estoppel or detrimental reliance for incurring rental expenses above the $450,000 sublimit; that the policy only entitled GIF to recover the ACV, not the RCV, of the C-1 crane; that National Union had fully compensated GIF for all damages arising out of the April 29, 2008, incident at GIF's facility in Aransas

No. 11-30375

Pass; and that GIF's counterclaim against National Union for contractual damages and bad faith penalties was without merit.  This appeal ensued.

## II.

This court reviews a district court's grant of summary judgment de novo. *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010).  Summary judgment is appropriate when the evidence before the court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the non-moving party must then come forward and establish the specific material facts in dispute.  *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).  If the non-moving party is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

The interpretation of an insurance contract is reviewed de novo.  *Admiral Ins. Co.*, 607 F.3d at 422.  Louisiana law is applicable and provides that an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.  *Cadwallader v. Allstate Ins. Co.*, 02-1637, (La. 6/27/03), 848 So. 2d 577, 580; *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, (La. 1/14/94), 630 So. 2d 759, 763.

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.  An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by

No. 11-30375

unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. The determination of whether a contract is clear or ambiguous is a question of law.

*Cadwallader*, 848 So. 2d at 580 (internal citations omitted).

GIF concedes that it intended to include the $450,000 coverage sublimit in the Rental Reimbursement endorsement when the parties renewed the 2008-09 policy. GIF appeals, however, the district court's finding that GIF's recovery of rental reimbursement expenses is limited to the $450,000 sublimit contained in the Rental Reimbursement endorsement in the reformed 2008-09 policy.[1] GIF contends that the crane rental expenses are covered by multiple provisions in

---

[1] GIF does not appeal any other part of the district court's summary judgment.

the policy, in addition to the Rental Reimbursement endorsement. Namely, GIF points to the Business Interruption provision ($16,000,000 sublimit) and the Extra Expenses provision ($5,000,000 sublimit), since the crane rental expenses were incurred to mitigate GIF's losses from the accident and to avoid further business interruption losses. GIF argues that there is no limitation or exclusion in the policy that prevents GIF from recovering crane rental expenses for the maximum amount of the aggregate total of the sublimits contained in the policy.

To support its position that the crane rental expenses should not be limited to the $450,000 coverage sublimit contained in the Rental Reimbursement endorsement, GIF contends that, during the claims adjustment period, Mr. Crow, National Union's claims adjuster, represented to GIF that its rental reimbursement expenses could be covered by other provisions in the policy such as the Business Interruption expenses provision and the Extra Expenses provision. GIF also points to the Reservation-of-Rights letters issued by National Union instructing GIF to mitigate its damages resulting from the accident, noting that neither of the letters mentions the $450,000 coverage sublimit in the Rental Reimbursement endorsement.

National Union counters that the 2008-09 policy (as reformed) is clear and unambiguous so it should be enforced as written thereby limiting GIF's total reimbursement for crane rental expenses to the $450,000 coverage sublimit contained in the Rental Reimbursement endorsement. National Union argues that interpreting the policy otherwise would undermine the purpose of sublimits because all sublimits fall under broader categories of coverage and are created specifically to narrow the scope of coverage provided in those broader categories. We agree.

A plain reading of the policy indicates that the Rental Reimbursement endorsement was intended by the parties to be the sole source of coverage for all rental reimbursement claims advanced by GIF. Had the parties intended for

other provisions of the policy to cover rental reimbursement expenses, it would have been unnecessary to have a separate Rental Reimbursement endorsement in the policy at all. Additionally, the Rental Reimbursement endorsement contains specific language and restrictions governing GIF's procurement and use of rental equipment pursuant to the policy. This narrow and specific language is only contained in the Rental Reimbursement endorsement and is not contained in any other provision in the policy, including the Business Interruption expenses and Extra Expenses sections, neither of which mention the phrase "rental reimbursement." Consequently, it is clear that the parties intended for the Rental Reimbursement endorsement to be the sole source of coverage for GIF's rental reimbursement claims. Since GIF does not dispute the $450,000 sublimit on the Rental Reimbursement endorsement, the district court did not err in holding that GIF's reimbursement claims for the crane rental expenses were limited to that amount under the policy.

GIF submits the alternative argument that its interpretation of the policy as containing multiple coverages by multiple sublimits for rental reimbursement expenses is reasonable. Thus, even if National Union's conflicting interpretation of the policy is also reasonable, there exists an ambiguity in the policy which must be resolved in favor of providing coverage for GIF. We are not persuaded by this argument.

For the reasons previously stated, the only reasonable interpretation of the policy is that the Rental Reimbursement endorsement was intended by the parties to be the sole source of coverage for GIF's rental reimbursement claims. Consequently, the policy is not susceptible to more than one reasonable interpretation and is not ambiguous as a matter of law. *See* La. C.C. art. 2056; *Cadwallader*, 848 So. 2d at 580.

No. 11-30375

## III.

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of National Union Fire Insurance Company and against Gulf Island Fabrication, Inc., dismissing its counterclaims in all respects.