## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20343

SARATOGA RESOURCES, INCORPORATED,

Plaintiff - Appellant

v.

LEXINGTON INSURANCE COMPANY,

Defendant - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2270

Before ELROD, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

Appellant Saratoga Resources, Incorporated filed a complaint against Appellee Lexington Insurance Company seeking a declaratory judgment and damages for breach of contract. The parties submitted cross-motions for summary judgment. Saratoga appeals the district court's order granting Lexington's motion for summary judgment and denying its motion for summary judgment. We **AFFIRM**.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20343

## I.

This case concerns a dispute over the amount of a deductible in an insurance policy.  Lexington issued an insurance policy to Saratoga covering the period from May 18, 2012 through May 18, 2013.  This policy insured several oil and gas properties owned by Saratoga.  Under the policy, each of the properties had a different insured value.  On August 28, 2012, Hurricane Isaac made landfall in Louisiana and damaged several of Saratoga's insured properties.  Saratoga submitted a claim for $3,085,047.39 in damages.  After an adjuster inspected the properties, Lexington paid $2,001,191.28 on this claim.  This amount reflected Lexington's calculation of the applicable deductible as $912,500.  Saratoga disagreed with this calculation of the deductible, arguing that it should be $400,000, not $912,500.  When Lexington did not relent, Saratoga filed a complaint in the Southern District of Texas seeking a declaratory judgment and damages for breach of contract.  Before commencing discovery, the parties agreed to file cross-motions for summary judgment limited to arguments that the language of the insurance policy is unambiguous.  The district court granted Lexington's motion for summary judgment and denied Saratoga's motion for summary judgment.  Saratoga timely appealed to this Court.

## II.

"This Court reviews the district court's grant of summary judgment de novo. The district court's interpretation of an insurance contract is a question of law that we also review de novo.  Because this is a diversity case involving a Texas contract, Texas rules of contract interpretation control."[1]

---

[1] *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010) (citations omitted) (internal quotation marks omitted).

2

No. 15-20343

III.

The dispute between the parties concerns the following provision of the insurance policy:

**Deductible:**  Each claim for loss or damage under this policy shall be subject to a per occurrence retention amount of **$125,000** unless a specific deductible shown below applies:

**Earth Movement/Flood/Named Windstorm** : 5% of Total Insurable Values at the time and place of the loss, subject to a minimum of **$250,000** any one occurrence

If two or more deductible amounts apply to a single occurrence, the total to be deducted shall not exceed the largest deductible applicable unless otherwise stated in the policy.

The parties agree that Hurricane Isaac was a "Named Windstorm." They also agree on the identity and insured values of the properties that were damaged. Their dispute lies in how to calculate the deductible for a "Named Windstorm" when more than one property is damaged. Lexington argues that the plain language of "5% of Total Insurable Values" sets the deductible at 5% of the aggregate sum of the insured value of each damaged property, which is equal to $912,500. Because this interpretation of the "Named Windstorm" paragraph only results in one "deductible amount[]," Lexington contends that the "two or more deductible amounts" paragraph does not come into play. Saratoga counters that "Total Insurable Values" does not refer to the "Total" of the "Insurable Values" of the damaged properties, but instead is the plural form of a term referring to the individual insured value of each property. According to Saratoga, the "Named Windstorm" paragraph thus requires the calculation of "mini-deductibles" that represent 5% of the insured value of each damaged property. Once the $250,000 minimum is reached, so the argument goes, the "two or more deductible amounts" paragraph applies and the total deductible

3

No. 15-20343

may not exceed the highest "mini-deductible," which in this case is $400,000. Saratoga argues that any other interpretation would deprive the "two or more deductible amounts" paragraph of meaning, as it would never apply.

We agree with the district court that only Lexington has advanced a reasonable interpretation of the insurance policy.  Under Texas law, "[t]erms are given their ordinary meaning unless the insurance policy shows that the words were meant in a technical or different sense."[2]  The "ordinary meaning" of "5% of Total Insurable Values" is 5% of the "Total" of the "Insurable Values" of the damaged properties—that is, 5% of the aggregate sum of the insured value of each damaged property.   Saratoga effectively concedes this point, but argues that the deductible provision uses "Total" in a "technical or different sense."   As support for this proposition, Saratoga points to an amendatory endorsement that lists the insured value of each property under the heading "Total Insured Value Per Interest."   Saratoga contends that the term "Total Insurable Value[]" should be equated with the term "Total Insured Value Per Interest."   Under this interpretation, the term "Total" does not mean "aggregate" or "sum," but instead is part of the term "Total Insured Value Per Interest."   This argument is unpersuasive.   The deductible provision refers to "Total Insurable Values," not "Total Insurable Values *Per Interest*."   Putting aside any difference between "Insurable" and "Insured," if the drafters of the deductible provision had intended to refer to "Total Insured Value Per Interest," they would have used the qualifier "Per Interest."   We cannot "rewrite the terms of the Policy" to include these words.[3]

---

[2] *Id.* at 423 (citing *Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385 (Tex. Ct. App. 2009)).

[3] *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995); *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 170 (Tex. Ct. App. 2008) ("We will not rewrite contracts to insert provisions that parties could have included themselves.").

The presence of the "two or more deductible amounts" paragraph does not compel a different conclusion. Although Saratoga is correct that we must "striv[e] to give meaning to every sentence, clause, and word" of the insurance policy "to avoid rendering any portion inoperative,"[4] Lexington's interpretation does not render the "two or more deductible amounts" paragraph inoperative. Under the insurance policy, "[i]f more than one event for Wind & Hail, Named Storm, Riot Strike or Civil Commotion, Vandalism & Malicious Mischief, Earth Movement, Flood or Terrorism . . . occurs within any period of seventy-two (72) hours . . . such covered events shall be deemed to be a single Occurrence." As the district court noted, the "two or more deductible amounts" paragraph applies when there is such a multi-event occurrence. If, for instance, one event falls within the "Named Windstorm" paragraph and the other within the general deductible paragraph, then the "two or more deductible amounts" paragraph requires that the total deductible not exceed the deductible for the "Named Windstorm" event.[5]

Saratoga counters that this hypothetical scenario would not trigger the "two or more deductible amounts" paragraph because an occurrence either falls within the general deductible paragraph or the "Named Windstorm" paragraph—not both. This interpretation of the deductible provision, however, is inconsistent with both the language of this provision and the other terms of the insurance policy.[6] Though the deductible provision provides that "[e]ach *claim* for loss or damage" falls within either the general deductible paragraph

---

[4] *Admiral Ins. Co.*, 607 F.3d at 423 (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)).

[5] The "Named Windstorm" event will always have the larger deductible because the minimum deductible for such an event is $250,000 while the maximum, and only, deductible for all other events is $125,000.

[6] *See Admiral Ins. Co.*, 607 F.3d at 423 ("Texas law instructs that we are to ascertain the scope of coverage by examining the policy as a whole . . . ." (citing *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004)).

or the "Named Windstorm" paragraph, the upshot of the provision defining multi-event occurrences is that an insured may have multiple *claims* for one *occurrence*.[7] In this situation, each individual claim will fall within either the general deductible paragraph or the "Named Windstorm" paragraph, but the overall occurrence may fall within both.

Accordingly, we conclude that the district court properly relied upon the "ordinary meaning" of the term "Total Insurable Values." Because Saratoga seeks to depart from this "ordinary meaning"—and is unable to establish that a "technical or different" meaning is warranted—its interpretation of the policy is unreasonable.[8] Under Texas law, when there is only one reasonable interpretation of an insurance policy, the court must "construe it as a matter of law."[9] We agree with the district court that this is the case here and adopt Lexington's interpretation of the deductible provision.[10]

## IV.

For the reasons stated above, we **AFFIRM**.

---

[7] This conclusion is further supported by the section of the insurance policy that provides that "each claim . . . shall be reported and adjusted separately."

[8] *See Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 580-81 (5th Cir. 2009); *V.L. Props., Inc. v. Alleghany Underwriting Risk Servs. Ltd./Lloyd's of London*, 130 F. App'x 675, 677 (5th Cir. 2005). For this reason, we do not consider the "Texas maxim favoring the insured." *See Certain Underwriters*, 570 F.3d at 577.

[9] *See Martin Res. Mgmt. Corp. v. Axis Ins. Co.*, 803 F.3d 766, 768 (5th Cir. 2015).

[10] Saratoga also challenges the district court's decision to grant Lexington's motion to strike. Like the district court, we conclude that the stricken evidence is "immaterial" to the interpretation of the policy. As a result, even assuming error, we need not address this claim because any error was harmless. *See Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 661 n.4 (5th Cir. 1999).